STRIPLING et al. v. HOING.

No. 14856.

Court of Civil Appeals of Texas.
Fort Worth.

July 11, 1947.

Ardell M. Young, of Fort Worth, for appellant, H. J. Cobb.

Byron Matthews, of Fort Worth, for appellants, H. L. Stripling, and others.

Seaberry & Hagman, of Weatherford, for appellee.

SPEER, Justice.

This appeal involves venue. Plaintiff Vincent L. Hoing instituted the suit in the District Court of Archer County, Texas, against defendants H. J. Cobb, Ford & Stripling Auto Brokerage, a copartnership, and the individual members of the partnership, Linwood Ford and H. L. Stripling, and H. L. Stripling Enterprise, Inc., a corporation, all alleged to be residents of and having places of business in Tarrant County, Texas to recover damages for the conversion of a described automobile, alleged to be the property of plaintiff.

All defendants timely filed separate pleas of privilege. Plaintiff filed a controverting affidavit which repled his cause of action. Briefly stated, the pleadings alleged that at and before January 24, 1947, plaintiff owned and was possessed of the automobile fully described; that on the last mentioned date H. J. Cobb came to plaintiff's home, advised plaintiff he was a detective from Fort Worth Police Department, flashed his badge, and told plaintiff the car he had in his possession was a stolen one and that he had come to pick it up and return it to the proper owner. That Mr. Cobb took the automobile and had it driven back to Fort Worth, Texas, and that defendants were, at the time of instituting this suit, in possession of it. He further alleged that said Cobb, in taking from plaintiff the automobile, was acting as agent for the other named defendants and not as a peace officer in Fort Worth, Texas, and acted within the scope of his agency. Other allegations are made in support of Cobb's agency, and no complaint is made of the sufficiency thereof. Plaintiff claims venue in Archer County, under Exception 7, to Article 1995 R.C.S., Vernon's Ann.Civ.St. art. 1995, subd. 7 for "Fraud and Defalcation"; Exception 9 for "Crime or Trespass"; Exception 23 as against corporations; and Exception 29a concerning all necessary parties defendants.

Trial court, without a jury, heard the venue facts and entered judgment overruling each and all of the five pleas of privilege. All defendants have appealed. There are five points of error presented but they singly point out as error, the acts of the court in overruling the plea of each of the five defendants. These points are discussed in the brief together and we shall do likewise.

The trial court did not indicate by his judgment which exception under Article 1995, R.C.S. he considered sufficient to sustain venue in that court and upon which to overrule the pleas. If the pleadings and proof are sufficient to sustain one or more of the exceptions relied upon the judgment must be affirmed although all exceptions pleaded may not have been proven. Lakeside Irrigation Co. v. Markham Irrigation Co., 116 Tex. 65, 285 S.W. 593; Central Motor Co. v. Roberson, Tex.Civ.App., 139 S.W.2d 287.

It is now the settled rule that in such cases as this, venue issues are only to be tried. The petition, pleas of privilege and controverting affidavit constitute the

pleadings in a venue hearing. Issues of fact going to the merits of the case are not to be determined and generally to sustain venue, only a prima facie cause of action need be shown. Farmers' Seed & Gin Co. v. Brooks, 125 Tex. 234, 81 S.W.2d 675. However, under different conditions the quantum of proof must be greater. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91; Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63, 67.

The nature of the general judgment entered overruling the pleas of privilege leaves us to look to the pleadings and proof to determine which of the exceptions to Article 1995, R.C.S. were sustained by the court. If either or more than one of the exceptions find support in the pleadings and proof the judgment will be sustained, under the authorities above cited.

The testimony is undisputed that at the time plaintiff's alleged cause of action arose, he was in possession of the automobile in question, claiming it as his own under what was apparently a bona fide sale and purchase for value transaction; that the chain of title certificates was complete in a Weatherford dealer when plaintiff purchased it, and that all necessary steps were taken by both the seller and buyer to perfect the title to the car in plaintiff under the provisions of our motor vehicle "Certificate of Title Act," found in Article 1436—1, Vernon's Ann. P. C. It appears that at the time the car was taken from plaintiff he had not received the certificate of title from the State Highway Department, yet he had presented his chain of certificates of title to the tax collector of his home county, made application for certificate of title and procured the collector's receipt therefor as provided by Sec. 31 of art. 1436—1, supra. Issuance of certificate of title was apparently held up by the State Highway Department because of information furnished it by defendant Cobb, to the effect that the automobile had been "stolen" by one C. M. McCain, whose name appeared in the chain of title, prior to the date of purchase by plaintiff.

It is indisputably true that on about January 24, 1947, defendant Cobb, a detective in the Fort Worth Police Department, went to plaintiff's home in Archer County and took the automobile from plaintiff and had it removed to Fort Worth; the car has remained in Fort Worth and out of the possession of plaintiff since the taking by Cobb until date of trial.

It was contended upon the venue hearing by all defendants in attendance, that Detective Cobb had a legal right to seize the car because it was "stolen" property; it was also contended that Cobb did not take the car against the will and consent of plaintiff. In view of the testimony we are not inclined to agree with their contentions in this respect. We need not judicially determine if under the facts disclosed that the car had been "stolen" by "McCain", one of plaintiff's predecessors in title. Plaintiff did not resist by legal proceedings nor go to the extent of violence against the officer of the law; he was a young man recently returned from the wars, and said he respected the authority of those over him and considered the "law" was right and did not go further than permit Cobb to take it; that the officer told him he came to take the car back to its proper owner; under these conditions, plaintiff delivered the ignition key to Cobb who took it away. We think that the taking was a conversion by Cobb, and that his right of such conversion will be determined when the case is tried upon its merits. It is the settled rule of law in this state that conversion is a trespass upon the property of another, and falls within Exception 9 to Article 1995, R.C.S. 43 Tex.Jur., 736, 737, Sec. 23.

The record discloses that Mr. Cobb was the only one of the defendants in this case present and personally participating in the seizure and removal of the automobile from the possession of plaintiff and out of Archer County. The pleadings and evidence charge that Mr. Cobb was the agent of the other defendants and was acting within the scope of his agency when he committed the trespass by taking the car; naturally unless he was such agent and so acting, the other defendants could not be bound by his acts. Therefore, there was an implied finding by the trial court that the agency existed.

The testimony of Mr. Stripling, at the hearing reveals that defendants Ford & Stripling were used car dealers in Fort Worth, Texas; that on about December 16, 1946, they sold the car in question to a man representing himself to be C. M. McCain for $1,350, that the purchaser gave to Mr. Ford his check on an Eastland Bank for the amount; that Mr. Ford, who handled the sale, called the Eastland Bank and inquired if C. M. McCain's check for that amount was good and was told "if the signature was good the check was good." The check was accepted and title certificate and transfer thereof were made to "C. M. McCain"; that the car was then and there delivered to the purchaser. Whether or not the buyer from Ford & Stripling was really named "C. M. McCain" was unknown to the sellers. It may be said that if his name is C. M. McCain, his transaction might be classed as one who gave a check without sufficient funds in the drawee bank to pay it, under the provisions of Vernon's Ann. Penal Code, art 567b, Sec. 2. As indicated above, we need not determine in this hearing whether the acts of the buyer constitute forgery, swindling or theft.

The testimony further shows that Ford & Stripling sent the check to the Eastland bank for payment and had a call next day stating the signature was not authorized and was a forgery. Mr. Stripling further testified that Mr. Ford reported the transaction to the Police Department at Fort Worth, telling them of the transaction; that Mr. Cobb from the department came to their place of business and talked to Mr. Ford in Stripling's presence. It also appears that one of the special duties of Detective Cobb was to recover stolen automobiles. He went to Eastland and contacted the Bank and its customer Mr. C. M. McCain; he procured the genuine signature of C. M. McCain and compared it to the signature on the check held by Ford & Stripling and then knew it was not the signature of the bank's customer; Cobb returned to Fort Worth and filed charges of "theft" against "C. M. McCain alias", and procured a warrant of arrest for "C. M. McCain alias"; he then began his search for the man and the car. Ford &

Stripling had located the car, and Cobb said he would investigate it; he went to Archer County to recover the car as "stolen" property. Plaintiff testified that Mr. Cobb advised him the car was stolen and since it was his day off duty at Fort Worth, and he had nothing else to do, he had come to get the automobile and return it to the persons from whom it was stolen. That Cobb then advised plaintiff the owner to whom he would return the car would be free to sell it again; that plaintiff's mother asked Cobb if he had authority to take it and he said he did have; plaintiff said he was not going to question the authority of the law.

The testimony shows without dispute that plaintiff purchased the car some days after defendants' transaction with "McCain", from a Weatherford, Texas, dealer and paid its full value with a check on a Wichita Falls Bank. There is no hint in the testimony that Cobb or either of the other defendants believed plaintiff is the same person who represented himself to be "C. M. McCain". There is further testimony that when Cobb reached Jacksboro with the car, on his way to Fort Worth, he telephoned to the place of business of Ford & Stripling and requested that they have a driver meet him there to bring the car on to Fort Worth and that they sent the driver. That some days after plaintiff had instituted this suit he procured the issuance of a writ of sequestration to have the car taken from defendants' possession. The defendant by bond, replevied the car and at the time of trial it was on the sales lot of defendant Ford & Stripling Auto Brokerage.

The circumstances above outlined are relied upon by plaintiff to show agency of Cobb for the other named defendants, and that he was acting within the scope of such agency when he dispossessed plaintiff of the car. Both Stripling and Cobb testified at the venue hearing and each denied the agency. Stripling said he did not pay or promise to pay Cobb anything for what he did; that naturally he had no personal knowledge of what Ford had done, but that no item of expense in the matter had

appeared on the books of the concern. Mr. Ford did not testify.

■ It must be conceded that the testimony of agency is rather meager, but we are unwilling to say that the circumstances related, furnish no evidence of the fact sought to be established. The court heard all and as a trier of the facts impliedly found by the judgment that the agency existed. Under such conditions, where as in this case, there was some evidence of probative force, we are not at liberty, if we chose to do so, to substitute our own judgment on the weight of the testimony for that of the court.

■ Agency is sometimes very difficult of proof by direct testimony. It may be established by circumstances, such as the relation of the parties and their conduct concerning the transaction in controversy. Daugherty v. Wiles, Tex.Comm.App., 207 S.W. 900. Many of the transactions in this case were handled by Mr. Ford of the defendant firm of Ford & Stripling. Mr. Ford did not testify at the hearing; in such circumstances as we have before us, when Mr. Ford fails to testify on the issue of agency here involved, it has been held that his silence strengthens the probative force of the affirmative truth sought to be established, and that his silence of itself is clothed with certain probative force. Farmers' Guaranty State Bank of Jacksonville v. Burrus Mill & Elevator Co., Tex. Civ.App., 207 S.W. 400; Central Motor Co. v. Roberson, Tex.Civ.App., 139 S.W.2d 287.

■ Since this appeal was filed by H. J. Cobb and his codefendants, he has filed in this court his motion to dismiss the appeal in so far as he is concerned. He asserts in his motion that the appeal has become moot as to him for the reason, that since the date of judgment below overruling his plea of privilege, the case was called for trial upon its merits and the plaintiff dismissed the cause of action against him, and proceeded to trial and judgment against the other defendants. A certified copy of the judgment, when tried on its merits, is attached to the motion. It provides for a dismissal by plaintiff of his action against Cobb and awards judgment for plaintiff against all other defendants. No party to the suit has filed a reply to the motion nor in any other way contested defendant Cobb's motion to dismiss his appeal. The motion will be sustained and the appeal of Mr. Cobb dismissed.

Under the record and the authorities above cited, the judgment overruling the pleas of privilege of the other defendants, is affirmed.